**RAILWAY LABOR EXECUTIVES' ASSOCIATION, Petitioner,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Respondents.**

**Railtex, Inc., and San Diego & Imperial Railroad Company, Inc., Respondent-Intervenors.**

Nos. 84–7684, 85–7577.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1986.

Decided March 4, 1987.

P. Lawrence McCaffrey, Jr., Washington, D.C., for respondent-intervenors.

John O'B. Clarke, Washington, D.C., for petitioner.

Dennis Starks, Washington, D.C., for respondents.

Before ALARCON, BRUNETTI and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Railway Labor Executives' Association (RLEA) petitions for a review of the Interstate Commerce Commission (the Commission) refusal to impose labor protective conditions on Railtex and its subsidiary, the San Diego & Imperial Valley Railroad Company, Inc. (Imperial). We agree with the Commission that Imperial is a new carrier exempt under 49 U.S.C. § 10901 from the mandatory labor protective provisions of 49 U.S.C. § 11343 and that the Commission did not abuse its discretion in declining to impose such conditions. We remand the case to the Commission to permit RLEA to petition the Commission under Section 10505(d) to revoke its denial of labor protection as to related carriers and to permit the Commission to consider such a petition if it is filed.

*Background.* Another railroad, San Diego and Arizona Eastern Railway (Railway), formerly operated the lines in question in Southern California. Railway was a subsidiary of the Southern Pacific Transportation Company (SP). After a tropical storm struck the San Diego region and damaged a portion of Railway's lines in 1976, SP sought to abandon the entire operation; its application was denied by the Commission. SP then sold the stock of Railway to the Metropolitan Transit Development Board (MTDB) with MTDB agreeing that common carrier freight service would be provided by a short line operator under a lease and management contract. MTDB selected Kyle Railways, Inc. (Kyle) to operate the lines. This arrangement was approved by the Commission in 1979. Railway continued to be the legal owner of the lines. Kyle operated the lines through its wholly-owned subsidiary Transportation Company (Transportation).

Operating results were disappointing and in late 1983 Transportation sought approval to discontinue its service and Railway sought abandonment of service. Their

joint application was denied by the Commission on April 30, 1984. MTDB then solicited proposals to replace Kyle and its subsidiary. Railtex, Inc., a Texas-based freight car leasing company, applied to be the replacement through its newly-formed and wholly-owned subsidiary, Imperial. MTDB accepted this proposal. Imperial petitioned for an exemption from labor protective conditions. On October 7, 1985 the Commission granted this request.

*Issues.* Is Imperial as a new carrier exempt from the mandatory labor protective conditions imposed by 49 U.S.C. §§ 11343, 11347?

Did the Commission abuse its discretion in refusing to impose labor protective conditions?

■ *Analysis.* It is undisputed that Imperial was not a carrier prior to its making the contract to operate the tracks of Railway. Under established law a new carrier's application to operate is treated by the Commission under Section 10901. *Black v. ICC,* 762 F.2d 106, 114 (D.C.Cir.1985). Section 11343 has been construed to apply only to acquisitions involving two or more existing carriers, not to a transaction between a carrier and a new entrant. *RLEA v. ICC,* 784 F.2d 959, 968 (9th Cir.1986); *accord. RLEA v. United States,* 791 F.2d 994, 1004 (2nd Cir.1986). Under these precedents there can be no doubt that Section 10901 was the correct section to apply in this case.

RLEA in its brief stresses that the Congress in § 11343(a)(2) spoke "directly to the type of transaction" here involved, namely "a contract to operate property of another carrier," in contrast § 10901(a)(3) refers only to approval to "operate an extended or additional railroad line." But while it is true that § 10901 only mentions a line that is "extended or additional," the Commission has not unreasonably interpreted the statute to include a contract to operate an existing line. Such interpretation is appropriate when the Commission is dealing with a non-carrier that is becoming an entrant and so has no existing lines of its own. We cannot say that the Commission's interpre-

tation of the statute was arbitrary or unreasonable. *Chevron USA Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ Once the transaction is classified as falling within § 10901, the Commission has discretion as to whether or not to impose labor protective conditions. RLEA points to serious hardship suffered by senior employees of Railway because of the Commission declining to impose these conditions. It is, however, within the authority of the Commission to balance the effect of its decision on railway labor against the costs that such conditions would impose on the carrier. Given the financial difficulties of running this railroad, we cannot say that the Commission abused its discretion in declining to impose the conditions. The Commission's brief conclusory statements justifying its decision are, in the context, enough, even if they are "barely sufficient." *RLEA v. ICC,* 784 F.2d 959, 971 (9th Cir.1986).

■ MTDB, Kyle and Transportation occupy a position analogous to that of a vendor in the transfer of operations to Imperial and Railtex. Precedent exists for imposing labor protective conditions on a vendor. *Durango,* 363 I.C.C. 295–296 (1979). When the Commission did not discuss at all the propriety of imposing labor protections on a vendor, its orders were remanded for consideration of this point. *RLEA v. ICC,* 784 F.2d 959, 971 (9th Cir. 1986). The failure to address the issues, to articulate the relevant factors, and to balance them was held to make the orders arbitrary and capricious. Even though by rule of the Commission no protective conditions will now be imposed "as a matter of course" on the vendor, the rule recognizes that an exceptional showing of labor protection might be justified. *Class Exemption for the Construction and Operation of Rail Lines,* 49 U.S.C. § 10901, Ex Parte No. 392 (December 1985) (*Ex Parte 392*). RLEA should have the opportunity to attempt to make such an exceptional showing

as to MDTB, Kyle, and Transportation. *RLEA v. ICC* at 973.

Affirmed in part and remanded in part.